ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

CATHERINE F. DAWSON et al.

*v.*

ANNIE SCHAEFER et al.

J. S. died in 1888, leaving six children, to whom, by name, he devised and bequeathed his residuary estate, subject to these provisions: That the real estate should not be sold until his youngest living child should reach the age of twenty-one; that pending that period his executor should manage the property for the benefit of his children, they being entitled to the net income in equal shares; that upon the arrival of the youngest living child at the age

Dawson v. Schaefer.

of twenty-one, then the children should "have absolute control of said property to do with and dispose of as best to them seems fit and proper." The last clause was immediately followed by this sentence: "If any of my children shall die leaving heir or heirs then such heir or heirs shall receive the same proportion as the parent of such heir or heirs would have received, that is, the parent's undivided part." A son, M., died in 1890, leaving him surviving an infant son, M., Jr. In 1892 the testator's youngest child became of age.—*Held*, that M., Jr., takes one undivided sixth of the real estate in place of M., M. having taken a vested estate subject to divestiture by his death, leaving a child, before the testator's youngest child became twenty-one years of age.

On bill for partition and answers.

*Mr. J. I. Blair Reiley*, for the complainants.

*Mr. Irwin W. Schultz*, for Annie Schaefer and others.

*Mr. Sylvester C. Smith*, for Matthew Schaefer, Jr.

THE CHANCELLOR.

Joseph Schaefer died January 24th, 1888, leaving six children him surviving, Mary, George, Matthew, Frances, Annie and Catherine, having duly made his last will, in and by which he bequeathed and devised all his property, real and personal, to his six children, by name, share and share alike, expressing his devise to be subject to these provisions:

"It is my will and I order and direct that no part of my real property shall be sold until my youngest child, Catherine, shall arrive at the age of twenty-one years. If my youngest child, Catherine, should die before arriving at the age aforesaid then the property shall not be sold until the next older, Annie, shall arrive at the age aforesaid, and if Annie dies before she arrives at the age aforesaid, then the said property shall not be sold until the next older shall arrive at the age aforesaid. And when my youngest child living shall have arrived at the age of twenty-one years, then they shall have absolute control of said property to do with and dispose of as best to them seems fit and proper. If any of my children shall die leaving heir or heirs then such heir or heirs shall receive the same proportion as the parent of such heir or heirs would have received, that is, the parent's undivided part.

"It is my will and I do order and direct that said property shall be controlled and managed to the best interests of my children, each to be entitled to receive an equal share with the other of all rents, issues and profits arising therefrom after all the just expenses, repairs and taxes are paid.

"It is my will and I do hereby appoint my executor hereinafter named trustee of the property aforesaid and I do order and direct that he shall manage and control the same to the best interest of my children, so that they may receive the greatest possible benefit and profit therefrom."

On the 21st of January, 1889, the testator's son Matthew executed a mortgage upon an undivided sixth of his father's real estate. He was not then married. On the 28th of September, 1890, he died, leaving his widow and an infant son, also named Matthew, surviving him. In October, 1892, Catherine Schaefer, the testator's youngest child, became of age. In 1893 the mortgagee of Matthew, Sr., proceeded to foreclose the supposed equity of redemption of the widow and infant heir-at-law of Matthew, Sr., in the undivided sixth of the real estate upon which the mortgage was given, and, in October of the same year, in virtue of a writ of *fieri facias* issued in pursuance of the decree of this court in such foreclosure suit, the sheriff of Warren county, where the lands are situate, made sale of the undivided sixth to Annie Schaefer.

In the present suit, a partition of the real estate of which Joseph Schaefer died seized is sought. The bill and answers present the question whether the infant son of Matthew Schaefer now has any interest in the property involved in the suit. It is insisted, in his behalf, that the estate devised by Joseph Schaefer to his children vested in them, subject to the condition subsequent that if either of them should die before the youngest living child of the testator should become of age, leaving a child or children, then his or her estate would divest, and his or her child or children take in his or her stead, and that as Matthew, Sr., died before that period, leaving a child, Matthew, Jr., him surviving, his estate was divested and his child took the undivided sixth.

If this contention be correct, the mortgage by Matthew Schaefer, Sr., like his estate, was subject to the condition and failed with the divestiture of the title to which it attached.

On the other hand, if the senior Matthew took a vested estate, only the full enjoyment of which was postponed, and the condition upon which the share is to go over relates to the time of

the death of the testator, and not to the coming of age of the youngest living child, then, the condition not having taken effect, the mortgage is valid, and all that would have gone by descent to the junior Matthew has passed to the purchaser in. virtue of the foreclosure proceedings.

It is not claimed that the foreclosure decree made title as against the junior Matthew beyond the cutting off of any equity of redemption he may have had as heir of his father.

It is the settled rule that where there is a bequest or a devise of the fee to one person, and " *in case of his death* " to another, such and similar expressions are to be confined to the event of death happening before the period of distribution, unless a contrary intention appears, and not to the event of death at any time. *Hawk. Wills 254, 256; Burdge* v. *Walling, 18 Stew. Eq. 12.* In view of this rule, it is necessary to examine the will and ascertain whether the testator specially indicated an intention as to the time to which this provision for death of a child shall relate. His gift to his children, in the first place, is absolute at his death. Subsequently the complete control and enjoyment of the real estate is postponed until the youngest child shall reach the age of twenty-one years. I think that the estate given by the testator to his children vested in them at his death. The postponement was merely of enjoyment for a purpose beneficial to his family. Nothing personal to any child induced it. *Post* v. *Herbert's Executor, 12 C. E. Gr. 540.* But the devise was. subject to a condition which withheld from them each an abso-- lute, unconditional fee until a certain period was passed. Which of two periods was intended is the important question. Did the testator mean the condition to relate to the death of a child before the time when the estate vested in his children—that is, at his. death—or did he mean it to relate to the time when they were to have complete control and the absolute power of disposition. over the real estate?

If he intended that the death should relate to the former time,. the title of his son Matthew vested free from condition, because he survived that time; but if he intended it to relate to the period when his children should have full control and absolute

Dawson v. Schaefer.

power of disposition, Matthew's estate vested subject to the con-dition—that is, of divesting if he failed to survive that subse-quent period, leaving issue.  *Hawk. Wills 237, 241.*

It is observed that in framing his will the testator first devised his real estate to his six children in terms which would carry the fee at his death, and then, that he subjected that disposition to the provision that the real estate should not be sold until his youngest living child should reach the age of twenty-one years, and gave his executor the *ad interim* control of the property in the interest of his children, they being entitled to its income in equal shares.  He then provided, in order to expressly terminate the suspension of control, that when his youngest living child should reach the age of twenty-one, his children should "have absolute control of said property to do with and dispose of as best to them seems fit and proper," and immediately followed this complete emancipation with the clause now in question:

"If any of my children shall die leaving heir or heirs then such heir or heirs shall receive the same proportion as the parent of such heir or heirs would have received, that is, the parent's undivided part."

That the testator means "child" by the word "heir" is manifested by his reference to "*the parent's*" undivided part.

There are two cases in this state which lead to that which I am satisfied is the proper ascertainment of the effect which the testator intended this clause to have.

The first is *Van Houten* v. *Pennington, 4 Halst. Ch. 272;* affirmed on appeal, *4 Halst. Ch. 745.*  There a testator devised and bequeathed to his son, three years of age, the residue of his estate in fee, then directed his executors to rent and invest his property for the benefit of the son until he should arrive at the age of twenty-one years, meanwhile supporting and educating him, following which direction, as part of the same sentence, was this clause: "but if my said son, Abraham Van Houten, should die having no children, then my will is, and I do dispose of my property in the following manner" &c.—that is, to others.

The son lived beyond the age of twenty-one years, and then died without having had or leaving children, and the question

arose whether he had taken absolutely. In accordance with the rule already cited it was held that he had. Incidentally the period at which the devise over was to take effect, if at all, was considered. Chancellor Halsted, in this court, indicated his opinion of that period in this language: "In view of the frame and general provisions of the will and the connection of the particular clause, if the particular clause had been 'but if my son should die,' then &c., could there be a doubt that the meaning would be '*die under twenty-one?*' I think not."

In the court of errors and appeals Chief-Justice Green, upon the same subject, said: "By the will the testator devises the residue of his estate, real and personal, to his son absolutely in fee simple by the broadest and most comprehensive terms. He then provides that the whole estate, real and personal, shall remain in the hands of his executors and be managed for the benefit of the devisee until he is twenty-one. That out of it he shall receive an education and a decent support until he is twenty-one, and then occurs the clause in question, but if he die without children then the estate shall go over. The devise over stands not in opposition to the original devise, but to the event of the devisee's coming into possession. And upon the principles of grammatical construction, the use of the conjunction between the two members of the sentence (whose office is to express merely the relation and dependence of thought) connects the devise over not solely or mainly with the original devise, but primarily with the time of its enjoyment. Now it is perfectly clear that in order to express fully the testator's meaning, it is necessary to insert before the clause containing the devise over a provision directing that the devisee should come into the possession of the estate on his attaining the age of twenty-one years. The whole clause would then stand thus: I give the residue of my estate to my son Abraham, his heirs and assigns forever. I direct my executors to rent the real estate, and to keep the proceeds thereof, together with my personal estate, invested for the benefit of my son until he arrive at twenty-one years of age. And my will is that upon his attaining the age of twenty-one years my son come into the possession of all his estate, real and

personal, but if he die without children, then to go over. It is true that there is in the will no express direction that his son shall come into possession of his estate at twenty-one, but it is there by necessary implication. The estate had been devised to him absolutely. It had been devised to the mother and placed in the hands of the executors until the devisee should attain the age of twenty-one years. The clause is necessary to complete the sense, and to express fully the connection and relation of thought subsisting in the mind of the testator between the original devise and the contingency upon which the devise over is limited. Standing in this connection, if the clause containing the devise over had been simply ' But if my son die, then over,' there could be no doubt that the devise over was upon the condition of the son's dying ' under twenty-one and without issue.' "

The other case is *Wurts' Executors* v. *Page, 4 C. E. Gr. 365.* There the fee of the testator's entire estate was devised to trustees in trust for eight children and two grandchildren, the latter taking one share between them. The income was to be applied (surplus thereof being accumulated) for the benefit of the several beneficiaries during minority. Three thousand dollars were to go to each of three of the sons and one grandson at the age of twenty-one, and the balance of their portions as they respectively attained the age of twenty-two years. This disposition was followed by this provision : " In case of the decease of any of my said children without issue, the share or shares of such so dying is to be merged in the general fund " &c. In construing the provision, in answer to the question whether the share of one who had died after reaching the age of twenty-three years was vested free from condition, Chancellor Zabriskie said that no one could read the will without feeling an impression that the general intent of the testator was that his sons, after twenty-two years of age, should have the absolute control of their whole shares, in the same manner as they had the control of the advances of $3,000 to be made to them. He said that he was satisfied that the intention of the testator, apparent on the face of the will, requires the construction that the words mean decease before the legacies are payable ; that the decisions of Chancellor

Halsted and of the court of errors and appeals in *Van Houten* v. *Pennington, supra,* not only warrant but require such construction. Of the application of that case he said : " The opinion of the court of errors, delivered by Chief-Justice Green, holds : ' The devise over stands, not in opposition to the original devise, but to the event of the devisees coming into possession.' In this case the will had expressly directed ' that the shares of the sons should be paid over as they respectively attain the age of twenty-two years.' And then the next provision that relates to the sons is the limitation over in case of death. In this case, as in that, it must be put in opposition, not to the original devise, but to the event of coming into possession. I think the rule in this state is settled and that this case must be ruled by that decision."

The present case is not so strong as the case of *Van Houten* v. *Pennington* in grammatical construction, for here the provision for the estate going over is not part of the same sentence which postpones enjoyment ; but in sequence of the testator's thought, manifested by the order of its expression in the will, this case appears to me to be fully within other reasons which led to that decision. In form it is perhaps closer to *Wurts' Executors* v. *Page.*

Here, as in those cases, I think that the provision for the gift over immediately succeeding, as it does, the full and final emancipation, stands in opposition to the event of the children coming into control and possession and not to the original devise to them.

I am of opinion, therefore, that the estate which Matthew, Sr., took was divested upon his failure to survive the time when Catherine became of age, and that Matthew, Jr., is now entitled to the undivided sixth in question.